## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

JAMES COPELAND,

              Petitioner,

vs.

WARDEN DONALD MORGAN,

              Respondent.

CASE NO. 1:20-CV-01600-JGC

DISTRICT JUDGE JAMES G. CARR

MAGISTRATE JUDGE AMANDA M. KNAPP

**REPORT AND RECOMMENDATION**

Petitioner James Copeland ("Petitioner" or "Mr. Copeland") brings this habeas corpus petition pursuant to 28 U.S.C. § 2254 based on his convictions for felonious assault, improper discharge of a firearm, and having a weapon while under a disability in Cuyahoga County Common Pleas Court Case No. CR-17-617356-B.  (ECF Doc. 1 ("Petition").)  Mr. Copeland's Petition was docketed in this Court on July 20, 2020.  (*Id*.)  However, "[u]nder the mailbox rule, a habeas petition is deemed filed when the prisoner gives the petition to prison officials for filing in the federal courts." *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002) (citing *Houston v. Lack,* 487 U.S. 266, 273 (1988)).  Thus, the Petition is deemed filed as of July 14, 2020, the date it was placed in the prison mailing system.  (ECF Doc. 1 at p. 15.)  Respondent filed an Answer/Return of Writ (ECF Doc. 6), Petitioner filed a Traverse (ECF Doc. 8), and Respondent filed a Reply to Petitioner's Traverse (ECF Doc. 9).

The matter was reassigned to the undersigned Magistrate Judge on October 1, 2021.  For the reasons set forth in detail herein, the undersigned finds dismissal of Ground Three of the Petition is warranted based on procedural default, and that Grounds One and Two of the Petition

are non-cognizable and without merit.  Accordingly, the undersigned recommends that the Court **DISMISS** Ground Three and **DISMISS** and/or **DENY** Grounds One and Two.

## I.    Factual Background

"In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  *See id.*; *Railey v. Webb*, 540 F.3d 393, 397 (6th Cir. 2008).

The Eighth District Ohio Court of Appeals summarized the facts underlying Mr. Copeland's conviction and sentence as follows:

> {¶3} On May 17, 2017, the Cuyahoga County Grand Jury indicted Copeland and his codefendant, Kenneth Sims, on two counts of murder in violation of R.C. 2903.02(A) and (B); two counts of felonious assault in violation of R.C. 2903.11(A)(1) and (2); one count of discharging a firearm on or near prohibited premises in violation of R.C. 2923.162(A)(3); and one count of having weapons while under disability in violation of R.C. 2923.13(A)(2). The murder and felonious assault charges carried one- and three-year firearm, notice of prior conviction, and repeat violent offender specifications. Additionally, the having weapons under disability count carried one- and three-year firearm specifications.

> {¶4} Copeland pleaded not guilty to the charges and waived his right to a jury trial for the having weapons while under disability charge, as well as the repeat violent offender and notice of prior conviction specifications attached to the murder and felonious assault charges. The case proceeded to trial, during which the state presented testimony from 20 witnesses and Copeland presented testimony from one witness.

> {¶5} According to testimony presented at trial, Copeland, Erica Moore, and another male went to the home of Neyda Barnes, William Earl's mother, in the early afternoon on May 5, 2017, looking for Earl. Earl had earlier agreed to buy a car at an auction for Moore in exchange for money, and Moore expected the car to be ready on May 5. Earl was not at Barnes's house when they arrived, and according to Barnes, Copeland became upset and began acting aggressively toward her. Barnes testified that she went back and forth with Copeland until she saw "the gun on the side of him[,]" and she immediately "shut up * * * [and] got really nervous" and that Copeland told her that she "could be got just like anybody else could be got." Barnes explained that she took that as meaning that "[h]e could kill [her] just

2

like he could kill anybody else[.]" Barnes stated that the conversation ended after Moore calmed Copeland down and that Copeland, Moore, and the other gentleman left in the car, driving in reverse down the street so that she did not "see the license plate."

{¶6} A short time later, Earl arrived at his mother's house with his fiancée and mother of his three children, Maleika Gooden. After Earl found out what happened, he left with Gooden, Tyrone Washington, and Jesse Green and went to Moore's house. Gooden testified that she had a 9 mm firearm in her purse that day.

{¶7} When they arrived at Moore's house, Earl went up to the front porch and asked Moore about the men who accompanied her earlier. During that conversation, Kenneth Sims, Moore's cousin, exited the house, and Earl asked if Sims was one of the guys that she took with her, but Sims said he was not. Gooden said that as Earl spoke to Moore, Sims pulled her aside and "lifted up his shirt and showed [her] that he had a weapon" and told her that Moore felt as if Earl and Gooden had "finessed her out of $ 1,500." Gooden then got into a "heated argument" with Moore about the car deal.

{¶8} Eventually, Earl told Gooden, Washington, and Green they were leaving, and they all got back in the car. As Earl walked toward the driver's seat, he was still arguing with Moore's other cousins, who were on the porch of the house next door. A number of witnesses testified that during this time, they saw Copeland and another male walking down the street toward Earl. Witnesses stated that they heard Copeland say something to Earl along the lines of "either * * * 'I'm here or I'm him' " or "What's up now?"

{¶9} Within moments, gunfire started. Both Gooden and Kenneth Sims testified that they saw Copeland and the other male shooting at Earl. While witnesses also testified that they saw Earl shooting back, Gooden testified that she never saw Earl with the gun and did not see him shoot or point a gun that day. She also said that the 9 mm firearm that the police recovered was hers and that she typically kept it in her purse. She said that the 9 mm firearm ended up on the ground underneath the car because she "fumbl[ed]" it after hearing the first shots. Sims also admitted that he had a gun — a "380" — on him at that time and that his gun "went off" but that he was not shooting at anybody. He explained that his gun went off because he "hit the ground" after the shots started with his gun in hand.

{¶10} After the gunfire stopped, Copeland, the other male with Copeland, and Sims "all took off running" together through a neighboring backyard. Sims stated that he ran because he "was on probation at the time" and was not supposed to have a gun. He said that while running from the scene, he asked Copeland what happened and that Copeland responded, "It was your cousin['s] fault." He said after a couple minutes of running, he split from Copeland and the other guy who continued to run in the same direction together.

3

{¶11} Police arrived soon after and interviewed a number of witnesses. Gooden identified Copeland as "one of the guys who walked up to Baldwin [Avenue] before the shots were fired." She stated that while she did not write that Copeland was one of the shooters on the photo array, she was "in distress" and that she did see Copeland shoot. She also testified that she identified Sims's nephew, Jamir Brown, as being present during the shooting in a photo array, on which she wrote "[s]een the hand and arm of the guy with the blue hoodie and heard shots and fire." During trial, however, Gooden testified that she did not recall seeing Brown fire a weapon.[]

{¶12} Moore said she saw Earl shooting a gun, but that she did not see Copeland or Sims with a gun. She also said she did not see Gooden, Brown, or Washington with a gun. She explained that while Earl was "not the only person that shot * * * [he was] the only one that I saw with a gun."

{¶13} During a photo lineup, Tyrone Washington identified Copeland and wrote that he "remember[ed] seeing him on Knowles [Avenue]."

{¶14} Sims turned himself into Cleveland police a few days later, but during his initial interviews, he said that he was not truthful and lied about the incident because he was "scared" and on probation. Sims explained that he told detectives that Copeland was one of the shooters, but that officers failed to include that information in their report. Sims identified Copeland as one of the individuals shooting and said he was wearing "a blue jacket and some dark pants." He said he did not know the second individual with Sims, but had seen that individual with Copeland before. Sims also denied that he told a corrections officer at the jail, Brandon Gordon Wheat, that he, not Copeland, shot Earl while he was being detained.

{¶15} Detective Joseph Marche testified that police "knew that there were at least two to three other firearms [other than the one police recovered near Earl's body] * * * due to the fact that there [were] two different shell casings on the scene." He explained that there were "shell casings from a 380 handgun and a 9 millimeter so that's what brought [police] to the conclusion that there was possibly two other firearms that were involved."

{¶16} Police arrested Copeland a few days later and collected the blue Nautica jacket that he was wearing.

{¶17} Curtiss Jones, a supervisor for the Cuyahoga County Medical Examiner's Office's trace evidence unit, testified that he performed a gunshot residue test on a blue Nautica jacket that Copeland was wearing the day police arrested him. He said that he collected residue from the sleeves and cuffs of the jacket and that it came back positive. Jones testified that Earl's hands came back positive for gunshot residue. He also said that there were no gunshot residue particles found from the kits collected from Jamir Brown and Theodore Jackson, Sims's stepfather. He said the kit taken from Gooden came back positive for gunshot residue. He said he did not receive a kit for Tyrone Washington.

4

{¶18} On cross-examination, Jones agreed that he was not able to establish when gunshot residue particles came to exist on a surface and that finding gunshot residue does not necessarily mean that an individual has recently fired a gun. He also agreed that one could test positive for gunshot residue simply by being in close proximity to another individual firing a gun.

{¶19} Erica Armstrong, a deputy medical examiner forensic pathologist for the Cuyahoga County Medical Examiner's Office, performed Earl's autopsy. She said that Earl suffered three gunshot wounds to his left chest, left abdomen, and right foot and that the manner of death was homicide and that Earl died as a result of the gunshots.

{¶20} The state then rested its case, and Copeland moved for an acquittal under Crim.R. 29, which the trial court denied.

{¶21} Copeland then called his sole witness, Brandon Gordon Wheat, who was a Cleveland corrections officer in May 2017. Wheat testified that he knew Kenneth Sims prior to his incarceration because they went to the same grade school. Wheat testified that while Sims was incarcerated, Sims said, "I shot him" three to four times. Wheat believed that Sims was referring to Earl.

{¶22} Copeland then rested and renewed his Crim.R. 29 motion, which the trial court again denied.

{¶23} The jury found Copeland not guilty of murder under R.C. 2903.02(A) and (B) and felonious assault under R.C. 2903.11(A)(1). The jury found Copeland guilty, however, of felonious assault in violation of R.C. 2903.11(A)(2) and the attached one-year firearm specification, but not guilty of the three-year firearm specification. The trial court found Copeland guilty of the repeat violent offender and notice of prior conviction specifications attached to that felonious assault count. The jury also found Copeland guilty of discharging a firearm on or near prohibited premises in violation of R.C. 2923.162(A)(3). The trial court found Copeland guilty of having weapons while under disability in violation of R.C. 2923.13(A)(3) and the attached one-year firearm specification, but not guilty of the three-year firearm specification.

{¶24} At sentencing, the trial court found that Copeland's convictions for felonious assault and having weapons while under disability did not merge. After hearing arguments from both sides, the trial court also found that Copeland's convictions for felonious assault and discharge of a firearm on or near prohibited premises did not merge either.

{¶25} The trial court sentenced Copeland to five years for felonious assault and one year for the firearm specification; eight years for discharging a firearm on or near prohibited premises; and three years for having weapons while under disability and one year for the firearm specification. The court ordered that all of those terms run consecutively to one another, giving Copeland an aggregate prison term of 18

years. The trial court also advised Copeland that he was subject to five years of mandatory postrelease control for his conviction for discharging a firearm on or near prohibited premises, three years of mandatory postrelease control for his felonious assault conviction, and three years of discretionary postrelease control for his conviction for having weapons while under disability.

*State v. Copeland*, No. 106988, 2019-Ohio-1370, ¶¶ 3-25, 2019 WL 1567916, *1-4 (Ohio Ct. App, April 11, 2019) (footnote omitted). (ECF Doc. 6-1, pp. 96-104.)

## II. Procedural Background

### A. State Court Conviction

On May 5, 2017, a Cuyahoga County grand jury charged Mr. Copeland with: two counts of murder in violation of Ohio Revised Code Section 2903.02(A) and 2903.02(B) (Counts 1 & 2), two counts of felonious assault in violation of Ohio Revised Code Section 2903.11(A)(1) and 2903.11(A)(2) (Counts 3 & 4), one count of discharging a firearm on or near prohibited premises in violation of Ohio Revised Code Section 2923.162(A)(3) (Count 5), and one count of having weapons while under disability in violation of Ohio Revised Code Section 2923.13(A)(2) (Count 6). (ECF Doc. 6-1, pp. 5-11.) The murder and felonious assault charges carried one-and three-year firearm specifications, and also included repeat violent offender specifications. (*Id.* at pp. 4-8.) The having weapons while under disability count carried one-and three-year firearm specifications. (*Id.* at p. 9.)

Mr. Copeland pled not guilty to all charges. (*Id.* at p. 12.) Prior to trial, he waived his right to a jury trial for the charge of having weapons while under disability and the repeat violent offender specifications attached to the murder and felonious assault charges. (*Id.* at p. 18.) He did not waive his right to a jury trial as to the remaining charges. (*Id.*)

After his jury trial, on February 7, 2018, the jury found Mr. Copeland guilty of felonious assault under Ohio Revised Code 2903.11(A)(2), with a one-year firearm specification under Ohio Revised Code 2941.41 (Count 4), and guilty of discharge of a firearm on or near prohibited

premises under 2923.162(A)(3) (Count 5).  (ECF Doc. 6-1, p. 19.)  On the same date, the trial

court found Mr. Copeland guilty of the repeat offender specification attached to the felonious

assault count in Count 4, and guilty of having weapons under disability in violation of Ohio

Revised Code 2923.13(A)(3), with a one-year firearm specification (Count 6).  (*Id.*)  Mr.

Copeland was found not guilty of the remaining charges.  (*Id.*)

At sentencing on February 28, 2018, the trial court found Mr. Copeland's convictions for

felonious assault and having weapons while under disability did not merge for sentencing.  (*Id* at

p. 21.)  The court then sentenced Mr. Copeland to an aggregate prison term of eighteen years,

with all terms running consecutive to one another, including: five years for Count 4 (felonious

assault); one year for the firearm specification on Count 4; eight years for Count 5 (discharging a

firearm on or near prohibited premises); thirty-six months for Count 6 (having weapons while

under disability); and one year for the firearm specification on count 6.  (*Id.* at pp. 21-22.)

## B.    Direct Appeal

On March 28, 2018, Mr. Copeland filed a notice of appeal with the Eighth District Court

of Appeals through appellate counsel.  (*Id.* at p. 24.)  He raised the following assignments of

error in his June 28, 2018 brief:

1.    The trial court erred by providing the jury a flight instruction which was
      unsupported by the record.

2.    The trial court erred by providing the jury an instruction that the jury could consider
      whether Copeland was complicit in the offenses charged.

3.    The trial court erred by failing to find the convicted offenses to be allied offenses
      pursuant to R.C. § 2941.25.

4.    The convictions are against the weight of the evidence.

(ECF Doc. 6-1, pp. 32, 43-64.)  The state filed its response on August 17, 2018 (*id.* at pp. 66-82)

and Mr. Copeland filed his reply brief on August 27, 2018 (*id.* at pp. 83-93).

In a written decision dated April 11, 2019, the Eighth District Court of Appeals affirmed the trial court decision.  *See Copeland*, 2019-Ohio-1370, 2019 WL 1567916.  The court found the trial court did not abuse its discretion in providing jury instructions regarding complicity and flight, that Mr. Copeland's convictions for felonious assault and discharging a firearm on or near prohibited premises were not allied offenses and did not warrant merging, and that his conviction was not against the manifest weight of the evidence.  *See id.* at ¶¶ 27-68, *4-12.

On May 28, 2019, Mr. Copeland filed a timely notice of appeal to the Ohio Supreme Court through new appellate counsel.  (ECF Doc. 6-1, p. 123.)  In his memorandum in support of jurisdiction, he raised the following propositions of law:

    I.     THE TRIAL COURT'S REFUSAL TO MERGE FELONIOUS ASSAULT AND DISCHARGE OF A FIREARM ON OR NEAR A PROHIBITED PREMISES AS ALLIED OFFENSES OF A SIMILAR IMPORT DEPRIVED APPELLANT OF HIS CONSTITUTIONAL DUE PROCESS RIGHTS.

    II.    THE TRIAL COURT'S CONSTITUTIONALLY-DEFECTIVE JURY INSTRUCTIONS WITH REGARD TO APPELLANT'S "COMPLICITY" IN THE DECEDENT'S SHOOTING AND "FLIGHT" FROM THE GUNFIRE UNFAIRLY PREJUDICED HIS RIGHT TO DUE PROCESS.

    III.    APPELLATE COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY OMITTING ASSIGNMENTS OF ERROR FOR (1) TRIAL COUNSEL'S FAILURE TO SUBMIT KEY EVIDENCE TO THE JURY AND (2) PROSECUTORIAL MISCONDUCT.

(*Id.* at p. 126.)  The state filed a memorandum in response.  (*Id.* at pp. 145-61.)  The Ohio Supreme Court declined to accept jurisdiction on June 23, 2019, pursuant to S. Ct. Prac. R. 7.08(B)(4).  *See State v. Copeland*, 126 N.E.3d 1171 (Ohio 2019) (table).

## C.    26(b) Motion to Reopen

On October 11, 2019, Mr. Copeland filed a *pro se* delayed application to reopen appeal pursuant to App. R. 26(B) in the Eighth District Court of Appeals.  (ECF Doc. 6-1, pp. 163-89.)

He acknowledged that the 90-day deadline to file his 26(B) application was on July 17, 2019, but argued there was "good cause" for his additional delay in filing because he believed his hired appellate counsel was preparing and filing the application.  (*Id.* at pp. 165-68.)  He alleged that his counsel's performance was deficient, that the deficient performance prejudiced him, and that he would have timely filed his 26(B) application absent that attorney error.  (*Id.*)

In his application, Mr. Copeland presented the following assignments of error:

1.  THE APPELLATE COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO RAIS[E] HIS TRIAL COUNSEL'S INEFFECTIVENESS WHEN HE FAILED TO SUBMIT KEY EVIDENCE TO THE JURY.

2.  THE APPELLATE COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO RAIS[E] HIS TRIAL COUNSEL'S INEFFECTIVENESS BY FAILING TO RAISE THE ISSUE OF PROSECUTORIAL MISCONDUCT.

3.  THE APPELLATE COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO RAISE THE ISSUE THAT CHARGE OF MURDER (B) AND FELONIOUS ASSAULT CONTAINS THE EXACT SAME ELEMENTS.

(*Id.* at pp. 173-80.)  On October 31, 2019, the State filed a motion to strike for exceeding the page limit under Appellate Rule 26(B)(4) (*id.* at p. 191) and a brief in opposition (*id.* at pp. 193-97).  Mr. Copeland then filed an application compliant with page limitations.  (*Id.* at pp. 200-10.)

The Eighth District Court of Appeals denied Mr. Copeland's application to reopen on January 14, 2020, finding that he had failed to establish "good cause" for filing his application after the expiration of the 90-day filing deadline.  *See State v. Copeland*, No. 106988, 2020-Ohio-97, 2020 WL 256454 (Ohio Ct. App. Jan. 14, 2020).

On February 15, 2020, Mr. Copeland appealed this decision to the Ohio Supreme Court. (ECF Doc. 6-1, p. 225.)  His brief to the Ohio Supreme Court included the certified question:

Does the failure of a retained licensed attorney to properly raise the claim of ineffective assistance of appellate counsel in a[n] App. R. 26(B) Application a showing of 'good cause' for filing an untimely App. R. 26(B) Application?

(*Id.* at p. 227.)  He further included the following three propositions of law:

First Proposition of Law: The Eighth District Court of Appeals erred when it denied Appellant's delayed Application to Reopen pursuant to App. R. 26(B) in which to argue in effective assistance of appellate counsel in violation of the Due Process Clause of the Fifth and Fourteenth Amendments to the U.S. Constitution and Article One Sec. 10 of the Ohio Constitution when Appellant had shown 'good cause' for untimely filing by submitting sufficient evidence that retained counsel agreed to file the Application but however breached the agreement.

Second Proposition of Law: The Appellate counsel rendered ineffective assistance of counsel by failing to raise Appellant's trial counsel's ineffectiveness when he failed to submit key evidence to the jury.

Third Proposition of Law: The appellate counsel rendered ineffective assistance by failing to raise Appellant's trial counsel ineffectiveness by failing to raise/object to issues of prosecutorial misconduct.

(*Id.*)  The state waived the filing of its memorandum in response.  (ECF Doc. 6-1, p. 246.)  On

April 14, 2020, the Ohio Supreme Court declined to accept jurisdiction of Mr. Copeland's

appeal.  *See State v. Copeland*, 142 N.E.3d 689 (Ohio 2020) (table).

## D.    Federal Habeas Corpus Petition

Mr. Copeland raises three grounds for relief in this Petition:

**First Ground for Relief:** The trial court's Constitutionally-defective jury instructions with regard to the Petitioner's "Complicity" unfairly prejudiced his right to Due Process.

**Second Ground for Relief:** The trial court's refusal to merge the Felonious Assault and Discharge of a firearm on or near a prohibited premises as allied offenses of similar import deprived the Petitioner of his Constitutional right to Due Process.

**Third Ground for Relie[f]:** Appellate R. 26(B) Application Ineffective Assistance of Appellate Counsel.

**Sub claims:** (1) The Appellate counsel rendered ineffective assistance of counsel by failing to raise Appellant's trial counsel's ineffectiveness when he failed to submit key evidence to the jury.

(2) The appellate counsel rendered ineffective assistance by failing to raise Appellant's trial counsel ineffectiveness by failing to raise/object to issues of prosecutorial misconduct.

(Petition, pp. 5-10; ECF Doc. 1-1, pp. 8-18.)

### III.  Law & Analysis

Respondent argues that Ground Three should be dismissed based on procedural default because Mr. Copeland failed to timely file his 26(B) application, and that Grounds One and Two should be denied on the merits.  (ECF Doc. 6, pp. 10-17, 19-33.)  Mr. Copeland responds that he is entitled to relief on Grounds One and Two, and that the procedural default of Ground Three should be excused based on "cause and prejudice."  (ECF Doc. 8-1, pp. 1-13.)

### A.  Standard of Review Under AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, PL 104–132, April 24, 1996, 110 Stat 1214, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the AEDPA.  *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  "As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner."  *Cullen v. Pinholster*, 563 U.S. 170, 181, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557 (2011).  Under 28 U.S.C. § 2254, federal courts may "entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States'" and in most instances, federal courts may not grant habeas relief "unless . . . the applicant has exhausted state remedies."  *Id.* (citing 28 U.S.C. §§ 2254(a), (b), (c)).  Further, if an application for writ of habeas corpus involves a claim that was "adjudicated on the merits in State court proceedings," the application "shall not be granted" unless the adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181; *Harrington v. Richter*, 562 U.S. 86, 100,

131 S. Ct. 770, 785, 178 L. Ed. 2d 624 (2011); *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir.

2007).  The burden of proof rests with the petitioner.  *See Cullen*, 563 U.S. at 181.

## B.    Claim in Ground Three Was Procedurally Defaulted

Respondent argues that Ground Three should be dismissed because the claim was

procedurally defaulted.  (ECF Doc. 6, pp. 10-17.)  Mr. Coleman responds that his procedural

default should be excused based on "cause and prejudice" under U.S. Supreme Court precedent.

(ECF Doc. 8-1, pp. 9-13.)  Respondent replies that the precedent cited by Mr. Coleman is

inapplicable in this case.  (ECF Doc. 9.)

### 1.    Legal Standard for Procedural Default

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted

all available remedies in state court.  *See* 28 U.S.C. § 2254(b)(1)(A).  A state defendant with

federal constitutional claims must fairly present those claims to the state courts before raising

them in a federal habeas corpus action.  *See* 28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459

U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *see also Fulcher

v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) ("Federal courts do not have jurisdiction to consider

a claim in a habeas petition that was not 'fairly presented' to the state courts").  To satisfy the

fair presentation requirement, a habeas petitioner must present both the facts and legal theories

underpinning his claims to the state courts.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th

Cir. 2000).  This means that the petitioner must present his claims to the state courts as federal

12

constitutional issues and not merely as issues arising under state law.  *See, e.g.*, *Baldwin v. Reese*, 541 U.S. 27, 33-34 (2004); *Franklin v. Rose*, 811 F.2d 322, 324-25 (6th Cir. 1987).  A constitutional claim for relief must also be presented to the state's highest court to satisfy the fair presentation requirement.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

A petitioner must also meet certain procedural requirements to have his claims reviewed in federal court.  *See Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006).  "Procedural barriers, such as . . . rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  *Daniels v. United States*, 532 U.S. 374, 381 (2001).  Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts.  *See Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  Failure to exhaust applies where state remedies are "still available at the time of the federal petition."  *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)).  In contrast, where state court remedies are no longer available, procedural default applies rather than exhaustion.  *See Williams*, 460 F.3d at 806.

Procedural default may occur in two ways.  First, a petitioner may procedurally default a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court."  *Id.*  In *Maupin v. Smith,* the Sixth Circuit articulated a four-prong analysis to be used when determining whether a claim is procedurally barred due to failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim, and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4)

whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error.  785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'"  *See Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."); *State v. Moreland*, 552 N.E. 2d 894, 899 (Ohio 1990) (finding failure to present a claim to a state court of appeals constituted a waiver).  "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Williams*, 460 F.3d at 806.  Thus, even if the exhaustion requirement is technically satisfied because no state remedies remain available to the petitioner, the petitioner's prior failure to present those claims for consideration in state court may cause a procedural default that bars federal court review of the claims. *See Williams,* 460 F.3d at 806 (citing *Coleman v. Thompson,* 501 U.S. 722, 732 (1991)).

To overcome procedural default, a petitioner must: (1) show cause for the default and demonstrate that actual prejudice resulted from the alleged violation of federal law; or (2) show that there will be a fundamental miscarriage of justice if the claims are not considered. *See Coleman*, 501 U.S. at 750.  "A fundamental miscarriage of justice results from the conviction of

one who is 'actually innocent.'"  *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006)

(quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

### 2.    Claim in Ground Three was Procedurally Defaulted

In Ground Three, Mr. Copeland asserts that he received ineffective assistance of appellate

counsel when his counsel on direct appeal failed to assert claims for ineffective assistance of trial

counsel based on failures to "submit key evidence to the jury" and "raise/object to issues of

prosecutorial misconduct."  (ECF Doc. 1-1, p. 15.)  Respondent argues this ineffective assistance

of appellate counsel claim is procedurally defaulted because Mr. Copeland did not file a timely

26(B) application to reopen his direct appeal, and has not shown that cause and prejudice or a

miscarriage of justice warrant excusing the default.  (ECF Doc. 6, pp. 10-17.)  Mr. Copeland

argues in response that his procedural default should be excused based on "cause and prejudice."

(ECF Doc. 8-1, pp. 9-13.)  His Petition explains that he hired a second appellate attorney to file

the Rule 26(B) application, but that attorney did not file the application.  (ECF Doc. 1-1, p. 16.)

### i.    Challenged Finding by State Court of Appeals

Mr. Copeland's claim for ineffective assistance of appellate counsel in Ground Three

contains two "sub-claims" for ineffective assistance of trial counsel that were not asserted in his

direct appeal to the Ohio court of appeals.  (*Compare* ECF Doc. 1-1, p. 15 *with* ECF Doc. 6-1, p.

32.)  The court of appeals affirmed the trial court's decision on April 11, 2019, *see Copeland*,

2019-Ohio-1370, 2019 WL 1567916, making any application to reopen the direct appeal due by

July 10, 2019.  *See* Ohio App. R. 26(B)(1).  Mr. Copeland did not file this application until

October 11, 2019, three months past the deadline.  (ECF Doc. 6-1, p. 163.)  In his untimely

application, he argued there was "good cause" to consider the application because his second

appellate counsel had failed to timely file the application as he instructed.  (*Id.* at pp. 165-68.)

The Eighth District Court of Appeals denied the Rule 26(B) application as untimely without reaching its merits, explaining:

{¶1} James Copeland has filed an application for reopening pursuant to App.R. 26(B). Copeland is attempting to reopen the appellate judgment rendered in *State v. Copeland*, 8th Dist. Cuyahoga No. 106988, 2019-Ohio-1370, which affirmed his conviction and the sentence of incarceration imposed in *State v. Copeland*, Cuyahoga C.P. No. CR-17-617365-B, for the offenses of felonious assault (R.C. 2903.11(A)(1)), discharge of a firearm on or near prohibited premises (R.C. 2923.162(A)(3)), and having weapons while under disability (R.C. 2923.13(A)(3)). We decline to reopen Copeland's appeal.

{¶2} App.R. 26(B)(2)(b) requires that Copeland establish "a showing of good cause for untimely filing if the application is filed more than 90 days after journalization of the appellate judgment" that is subject to reopening. The Supreme Court of Ohio, with regard to the 90-day deadline provided by App.R. 26(B)(2)(b), has established that:

> [W]e now reject [the applicant's] claims that those excuses gave good cause to miss the 90-day deadline in App.R. 26(B). * * * Consistent enforcement of the rule's deadline by the appellate courts in Ohio protects on the one hand the state's legitimate interest in the finality of its judgments and ensures on the other hand that any claims of ineffective assistance of appellate counsel are promptly examined and resolved. Ohio and other states "may erect reasonable procedural requirements for triggering the right to an adjudication," *Logan v. Zimmerman Brush Co.* (1982), 455 U.S. 422, 437, 102 S.Ct. 1148, 71 L.Ed.2d 265, and that is what Ohio has done by creating a 90-day deadline for the filing of applications to reopen. * * * *The 90-day requirement in the rule is "applicable to all appellants,"* *State v. Winstead* (1996), 74 Ohio St.3d 277, 278, 658 N.E.2d 722, and [the applicant] offers no sound reason why he— unlike so many other Ohio criminal defendants—could not comply with that fundamental aspect of the rule.

(Emphasis added.) *State v. Gumm*, 103 Ohio St.3d 162, 2004-Ohio-4755, 814 N.E.2d 861, & 7. *See also State v. Lamar*, 102 Ohio St.3d 467, 2004-Ohio-3976, 812 N.E.2d 970; *State v. Cooey*, 73 Ohio St.3d 411, 653 N.E.2d 252 (1995); *State v. Reddick*, 72 Ohio St.3d 88, 647 N.E.2d 784 (1995).

{¶3} Herein, Copeland is attempting to reopen the appellate judgment that was journalized on April 11, 2019. The application for reopening was not filed until October 11, 2019, more than 90 days after journalization of the appellate judgment in *Copeland*. Thus, the application for reopening is untimely on its face.

{¶4} In an attempt to argue good cause for the untimely filing of the application for reopening, Copeland argues detrimental reliance upon retained counsel. Specifically, Copeland argues that his retained counsel failed to timely file an App.R. 26(B) application for reopening.

{¶5} Reliance upon appellate counsel does not establish good cause for the untimely filing of an application for reopening. *State v. White*, 8th Dist. Cuyahoga No. 101576, 2017-Ohio-7169; *State v. Huber*, 8th Dist. Cuyahoga No. 93923, 2011-Ohio-3240; *State v. Koreisl*, 8th Dist. Cuyahoga No. 90950, 2011-Ohio-6438; *State v. Hudson*, 8th Dist. Cuyahoga No. 91803, 2010-Ohio-2879. *See also State v. Nicholson*, 8th Dist. Cuyahoga No. 82825, 2004-Ohio-2394, *reopening disallowed*, 2006-Ohio-3020, (recognizing that ineffective assistance of appellate counsel is not a sufficient excuse to support an untimely filing for an application to reopen). Additionally, "lack of knowledge or ignorance of the time constraint, applicable to an application for reopening per App.R. 26(B), does not provide sufficient cause for untimely filing." *Hudson* at ¶ 7, citing *State v. Klein*, 8th Dist. Cuyahoga No. 58389, 1991 WL 41746, 1991 Ohio App. LEXIS 1346 (Mar. 28, 1991), *reopening disallowed* (Mar. 15, 1994), motion No. 249260, *aff'd*, 69 Ohio St. 3d 1481, 634 N.E.2d 1027 (1994).

{¶6} Moreover, this court has denied applications for reopening even if they are filed only a day after the deadline. *See*, *e.g., State v. Kimbrough*, 8th Dist. Cuyahoga No. 97568, 2012-Ohio-4931; *State v. Gray*, 8th Dist. Cuyahoga No. 90981, 2009-Ohio-4360.

{¶7} Finally, the exhibit attached to Copeland's application for reopening, a copy of the retainer contract executed by Copeland's mother on his behalf, clearly provides that retained counsel was "to appear as counsel and in the matter of memorandum in support of jurisdiction application to the Ohio Supreme Court." No reference is made with regard to retained counsel filing an App.R. 26(B) application for reopening on behalf of Copeland.

{¶8} Accordingly, the application for reopening is denied.

*State v. Copeland*, 2020-Ohio-97 at ¶¶ 1-8, 2020 WL 256454 at *1-2.

### ii.    Petitioner Failed to Comply with State Procedural Rules

The first way a petitioner may procedurally default is by failing "to comply with state procedural rules in presenting his claim to the appropriate state court." *See Williams*, 460 F.3d at 806. This is the basis upon which Respondent argues Mr. Copeland has procedurally defaulted Ground Three. (ECF Doc. 6, p. 14.) To assess procedural default on this basis, courts in this

circuit apply the four-prong *Maupin* analysis. *See Williams*, 460 F.3d at 807 (citing *Maupin*, 785 F.2d at 138).

Under the first two prongs of the *Maupin* analysis, this Court must determine whether Mr. Copeland failed to comply with a procedural rule and whether the state enforced that rule. *See* 785 F.2d at 138. Here, the applicable procedural rule required Mr. Copeland to file his Rule 26(B) application to reopen his direct appeal within ninety days of journalization of the court of appeals decision, unless he demonstrated good cause for an untimely filing. *See* Ohio App. R. 26(B)(1) ("An application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time."). The first two prongs are met in this case because the state court of appeals explicitly held that Mr. Coleman did not timely file his application to reopen his direct appeal and did not establish "good cause" to excuse his untimeliness. *See Copeland*, 2020-Ohio-97 at ¶¶ 3-7, 2020 WL 256454 at *1-2.

Under the third prong of the *Maupin* analysis, this Court must determine whether the procedural rule establishes an adequate and independent state law ground under which the claim may be procedurally defaulted. *See* 785 F.2d at 138. The Sixth Circuit has confirmed that the denial of a Rule 26(B) application as untimely and lacking in good cause is "an adequate and independent state procedural ground" sufficient to satisfy the third *Maupin* prong. *Monzo v. Edwards*, 281 F.3d 568, 578 (6th Cir. 2002). Thus, the third prong has also been met.

### iii.    Procedural Default Should Not Be Excused

If the first three prongs are met, the fourth prong of the *Maupin* analysis asks whether the procedural default should be excused. *See* 785 F.2d at 138. To excuse his procedural default, Mr. Copeland must: (1) show cause for the default and demonstrate that actual prejudice resulted from the alleged violation of federal law; or (2) show that there will be a fundamental

miscarriage of justice if the claims are not considered.  *See Coleman*, 501 U.S. at 750.  Here, Mr. Copeland argues that his procedural default should be excused based on "cause and prejudice" under the standards set forth by the Supreme Court in *Martinez v. Ryan*, 566 U.S. 1 (2012) and *Trevino v. Thaler*, 569 U.S. 413 (2013).  (ECF Doc. 8-1, pp. 9-13.)

To establish "cause" to excuse a procedural default, a petitioner must point to "something external . . . that cannot be fairly attributed to him."  *Coleman*, 501 U.S. at 753.  Even his own attorney's "ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'"  *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  Thus, a petitioner must ordinarily "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Id*.

While "[i]neffective assistance of counsel may in some circumstances constitute the 'cause' necessary to overcome a procedural default," the Supreme Court stressed in *Coleman* that "'a petitioner cannot claim constitutionally ineffective assistance of counsel' in proceedings where '[t]here is no constitutional right to an attorney,' such as 'state post-conviction proceedings.'"  *McClain v. Kelly*, 631 Fed.Appx. 422, 429 (2015) (citing *Murray*, 477 U.S. at 492; quoting *Coleman*, 501 U.S. at 752).  Accordingly, the Supreme Court held that "alleged attorney error in state post-conviction proceedings 'cannot constitute cause to excuse [a] default in federal habeas.'"  *McClain*, 631 Fed. Appx. at 429 (quoting *Coleman*, 501 U.S. at 757).

The *Martinez* and *Trevino* cases cited by Mr. Copeland carve out narrow exceptions to *Coleman's* general rule that attorney error in post-conviction proceedings cannot demonstrate "cause" to excuse a procedural default, but those exceptions are inapplicable here.  In *Martinez*, the Supreme Court held that "[i]nadequate assistance of counsel at initial-review collateral

proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."  566 U.S. at 8.  Initial-review collateral proceedings were defined as proceedings providing "the first occasion to raise a claim of ineffective assistance at trial," i.e., "a prisoner's 'one and only appeal' as to an ineffective-assistance claim."  *Martinez*, 566 U.S. at 8 (quoting *Coleman*, 501 U.S. at 755-56).  The *Trevino* Court expanded the *Martinez* exception to collateral proceedings where the "state procedural framework . . . makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal."  *Trevino*, 569 U.S. at 429.  Here, there is no argument that Ohio's procedural framework precluded Mr. Copeland from raising his claims for ineffective assistance of trial counsel on direct appeal.  Indeed, he specifically argues in the Petition that his appellate counsel erred in not raising those claims on direct appeal.  (ECF Doc. 1-1, p. 15.)  Thus, the narrow exceptions articulated in *Martinez* and *Trevino* do not apply here.

In *McClain v. Kelly*, the Sixth Circuit considered the more specific question raised in this case: "whether alleged ineffective assistance of counsel in connection with a Rule 26(B) application falls within *Coleman's* general rule that attorney error in proceedings wherein there is no right to counsel cannot serve as cause for a procedural default."  631 Fed. Appx. at 429.  In doing so, the court outlined numerous Sixth Circuit decisions that found Rule 26(B) applications to be collateral proceedings for which there is no right to effective counsel, and therefore held that ineffective assistance of counsel could not establish "cause" to excuse a procedural default. *See McClain*, 631 Fed. Appx. at 429-31 (collecting cases).  The *McClain* court also considered the impact of *Martinez*, observing that exception was limited to "initial-review collateral proceedings for claims of ineffective assistance of counsel *at trial*" while "ineffective assistance of post-conviction counsel cannot supply cause for procedural default of a claim of ineffective

assistance of appellate counsel." *McClain*, 631 Fed. Appx. at 432 (citations and internal

quotations omitted; emphasis in original); *see also Hodges v. Colson*, 727 F. 3d 517, 531 (6th

Cir. 2013) ("Under *Martinez's* unambiguous holding our previous understanding of *Coleman* in

this regard is still the law—ineffective assistance of post-conviction counsel cannot supply cause

for procedural default of a claim of ineffective assistance of appellate counsel.") (citation

omitted).  The *McClain* court emphasized the Supreme Court's own statement that the *Martinez*

exception did not "extend to attorney errors in any proceeding beyond the first occasion the State

allows a prisoner to raise a claim of ineffective assistance at trial."  *McClain*, 631 Fed. Appx.  at

432 (quoting *Matinez*, 132 S. Ct. at 1320 (emphasis removed)).  Based on this thorough analysis

of Sixth Circuit and Supreme Court standards, the *McClain* court found the failure to timely file

a Rule 26(B) application caused procedural default of the petitioner's claims, and that ineffective

assistance of counsel in connection with that failure could not support a finding of "cause" to

excuse the default.  *See McClain*, 631 Fed. Appx. at 437.

The same analysis is appropriate in this case.  Mr. Copeland states he hired an attorney to

file a 26(B) application asserting his claim for ineffective assistance of appellate counsel, but that

the attorney instead filed the claim with the Ohio Supreme Court.  (ECF Doc. 1-1, p. 16; ECF

Doc. 8-1, p. 10.)  He argues that "cause" to excuse his procedural default is established because

his second appellate attorney "failed to properly preserve" his claims for ineffective assistance of

trial and appellate counsel via the Rule 26(B) filing, and therefore "deprive[d] [Mr.] Copeland of

the opportunity to argue the claim of ineffectiveness of trial and appellate counsel."  (ECF Doc.

1-1, p. 17; *see also* ECF Doc. 8-1, p. 13.)

Regardless of whether Mr. Copeland can show that his second appellate attorney erred or

was ineffective in his failure to assert a claim for ineffective assistance of appellate counsel via a

timely 26(B) application, the alleged attorney error cannot establish "cause" to excuse the

procedural default because Mr. Copeland did not have a constitutional right to the assistance of

counsel in filing his Rule 26(B) application.  *See McClain*, 631 Fed. Appx. at 432; *Hodges*, 727

F. 3d at 531; *see also Davila v. Davis*, 582 U.S. 521 534-35 (2017) (noting *Martinez/Trevino*

exception "was principally concerned about *trial errors*—in particular, claims of ineffective

assistance of *trial* counsel," and explaining "[t]he equitable concerns raised in *Martinez* therefore

do not apply" to claims of ineffective assistance of appellate counsel); *Porter v. Genovese*, 676

F. App'x 428, 434 (6th Cir. 2017) ("*Martinez/Trevino*'s limited exception does not extend to

claims of ineffective assistance of appellate counsel.")  The undersigned therefore finds Mr.

Copeland has procedurally defaulted on the claim in Ground Three, and has not met his burden

under the fourth *Maupin* prong to demonstrate "cause and prejudice" to excuse the default.

Even where a petitioner cannot demonstrate cause and prejudice sufficient to overcome

procedural default, that default can be excused if he shows there will be a "fundamental

miscarriage of justice" if his claims are not considered.  *See Coleman*, 501 U.S. at 750.  "A

fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'"

*Lundgren*, 440 F.3d at 764 (quoting *Murray*, 477 U.S. at 496).  For an actual innocence claim to

be credible, a petitioner must "support his allegations of constitutional error with new reliable

evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or

critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324.  He must

further "show that it is more likely than not that no reasonable juror would have convicted him in

light of the new evidence." *Id.* at 327.  This is intended to permit petitioners with "truly

extraordinary" cases a "meaningful avenue by which to avoid a manifest injustice." *Id.* (internal

quotations omitted).  Notably, "'actual innocence' means factual innocence, not mere legal

insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).  Because Mr. Copeland does not argue he is actually innocent or offer new reliable evidence not presented at trial to establish that he is factually innocent, the undersigned also finds he has not met his burden to demonstrate that his procedural default should be excused due to a finding of "actual innocence."

For the reasons set forth above, the undersigned finds the claim in Ground Three was procedurally defaulted, and that Mr. Copeland has not met his burden to show cause and prejudice or a fundamental miscarriage of justice to excuse that default.  Accordingly, the undersigned recommends that the Court **DISMISS** Ground Three with prejudice.

**C.      Claim in Ground One is Non-Cognizable and/or Without Merit**

In Ground One of the Petition, Mr. Copeland argues that the trial court's instructions to the jury regarding "complicity" were constitutionally defective and deprived him of due process. (Petition, p. 6; ECF Doc. 1-1, pp. 8-13.)  Respondent argues in response that the challenge to a state court jury instructions is not cognizable in this federal habeas proceeding.  (ECF Doc. 6, pp. 19-20.)  Alternately, to the extent Mr. Copeland is asserting a constitutional due process claim, Respondent argues that the claim is procedurally defaulted because it was not fairly presented to the Ohio court of appeals, and also fails on the merits.  (*Id.* at pp. 20-29.)

As to procedural default, Respondent argues that Ground One is procedurally defaulted because the claim was not "fairly presented" under the same constitutional issue in state court. (ECF Doc. 6, pp. 20-21.)  But Mr. Copeland correctly points out that he argued in state court that the jury applied the complicity instructions in a manner that violates due process.  (ECF Doc. 8-1, pp. 2-3; *see* ECF Doc. 6-1, pp. 51-52 (arguing error "in violation of Copeland's due process protections under the Fifth and Fourteenth Amendments to the United States Constitution").) The undersigned is therefore not persuaded by the procedural default argument.

Nevertheless, for the reasons explained below, the undersigned concludes that Ground One should be **DISMISSED** to the extent Mr. Copeland seeks to challenge the jury instruction under state law and should be **DENIED** on the merits to the extent he contends the instructions violated his due process rights.

### 1.    Federal Habeas Review of State Law Finding Regarding Jury Instructions

"It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted)).

 "Because 'federal habeas corpus relief does not lie for errors of state law,'" federal courts "may grant the writ based on errors in state jury instructions only in extraordinary cases." *Daniels v. Lafler*, 501 F.3d 735, 741 (6th Cir. 2007) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).  "To warrant habeas relief, 'jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair. The burden is even greater than that required to demonstrate plain error on appeal.'"  *Buell v. Mitchell*, 274 F.3d 337, 355 (6th Cir. 2001).  Thus, the question on federal habeas review is not whether the state trial court failed to cure a particular ailing jury instruction, but "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Daniels*, 501 F.3d at 741 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

2.      **State Court Adjudication of Jury Instruction Challenge**

Mr. Copeland's challenge to the state trial court's complicity jury instruction was

adjudicated on the merits by the state court of appeals.  *See Copeland*, 2019-Ohio-1370 at ¶¶ 36-

48, 2019 WL 1567916 at *6-9.  That court made the following findings:

> [T]he trial court gave the following complicity instruction to the jury at the state's
> request and over Copeland's objection:

>> The State of Ohio has presented a theory that the defendant acted in
>> complicity with the principal offender in the commission of murder,
>> felonious assault, and discharge of a firearm in a — discharging a
>> firearm on or near a prohibited premises.

>> A person who is complicit with another in the commission of a
>> criminal offense is regarded as guilty as if he personally performed
>> every act constituting the offense. This is true even if he did not
>> personally perform every act constituting the offense or was not
>> physically present at the time the offense was committed.

>> Before you can find the defendant guilty of complicity or being
>> complicit in the commission of murder, felonious assault, and
>> discharging a firearm on or near prohibited premises you must find
>> beyond a reasonable doubt that on or about the 5th day of May 2017
>> in Cuyahoga County, Ohio that the defendant aided or abetted
>> another in the commission of murder, felonious assault, or discharge
>> of a firearm on or near prohibited premises.

>> Aided or abetted. Before you can find the defendant guilty of
>> complicity by aiding and abetting you must find beyond a
>> reasonable doubt that the defendant's — that the defendant
>> supported, assisted, encouraged, cooperated with, advised, or incited
>> the principal offender in the commission of the offense and that the
>> defendant shared the criminal intent of the principal offender.

>> Such intent may be inferred from the circumstances surrounding the
>> offense including but not limited to the presence, companionship,
>> and conduct before and after the offense was committed. The mere
>> presence of the defendant at the scene of the offense is not sufficient
>> to prove in and of itself that the defendant was an aider and abettor.

> {¶37} Copeland argues that there was insufficient evidence to give the complicity
> instruction. Specifically, he argues that the instruction was improper because there
> "was little or no evidence that Copeland acted with agreement with another actor"

25

and "no evidence of prior contact between Copeland and any alleged shooter" or "discussions at the scene regarding a concerted effort of those present to shoot [Earl]." He maintains that the "mere fact that he may have been standing next to or near a shooter does not establish [an] agreement to commit an illegal act."

{¶38} Copeland also argues he suffered prejudice as a result of the instruction because "[i]t permitted jurors to fill in missing substantive evidence of Copeland's intent or of that he was the actual shooter" and "[j]urors who may not have believed that sufficient proof existed that Copeland fired a weapon may have been persuaded to reach a guilty verdict anyway by misunderstanding a confusing instruction."

{¶39} In response, the state argues that the instruction was appropriate because "[t]here is no requirement that an aider or abettor enter into an agreement with other participants; all that is required is that they 'supported, assisted, encouraged, cooperated with advised, or incited' another." It also argues that Copeland "was not 'merely present' at the scene, but was an active, shooting participant[.]" The state cites to *State v. Capp*, 8th Dist. Cuyahoga No. 102919, 2016-Ohio-295, 2016 WL 541444, and *State v. Hoston*, 8th Dist. Cuyahoga No. 102730, 2015-Ohio-5422, 2015 WL 9438505, in support.

{¶40} Importantly, in his reply brief, Copeland states that the state "is correct in arguing that there is no requirement that a specific agreement be entered into by defendants before a complicity instruction is provided" and agrees with the trial court's wording in the complicity instruction. He argues, however, that there was insufficient evidence that Copeland "supported, assisted, encouraged, cooperated with advised, or incited" the shooter; he points to the fact that since the evidence showed that Earl fired his gun first, "the shooter did not need nor depend on any encouragement from Copeland before firing back."

{¶41} "A person aids or abets another when he supports, assists, encourages, cooperates with, advises, or incites the principal in the commission of the crime and shares the criminal intent of the principal." *State v. Langford*, 8th Dist. Cuyahoga No. 83301, 2004-Ohio-3733, 2004 WL 1575554, ¶ 20, citing *State v. Johnson*, 93 Ohio St.3d 240, 754 N.E.2d 796 (2001). "A defendant may 'aid' or 'abet' another in the commission of an offense by his words, gestures, deeds, or actions." *Capp* at ¶ 25.

{¶42} Further, "[a]iding and abetting may be shown by direct or circumstantial evidence[,]" and the intent to aid or abet "may be inferred from the circumstances surrounding the crime." *Id.*; *State v. Johnson*, 93 Ohio St.3d 240, 246, 754 N.E.2d 796 (2001). Likewise, "participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed." *Id.* at 245, 754 N.E.2d 796, citing *State v. Pruett*, 28 Ohio App.2d 29, 273 N.E.2d 884 (4th Dist.1971).

{¶43} However, "the mere presence of an accused at the scene of a crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor." *State v. Widner*, 69 Ohio St.2d 267, 269, 431 N.E.2d 1025 (1982). "Mere association with the principal offender * * * is [also] insufficient to establish complicity." *Hoston,* 8th Dist. Cuyahoga No. 102730, 2015-Ohio-5422, at ¶ 13, citing *State v. Doumbas*, 8th Dist. Cuyahoga No. 100777, 2015-Ohio-3026, 2015 WL 4576110.

{¶44} In *Hoston*, we examined whether there was sufficient evidence supporting the defendant's conviction for complicity by aiding and abetting. We stated,

> Although no direct evidence was introduced to establish that Hoston fired his weapon during the exchange of gunfire, the state introduced circumstantial evidence from which one could conclude that he participated in the exchange of gunfire. Furthermore, even if Hoston did not fire his weapon, the state introduced sufficient evidence to establish that he aided and abetted Phillips and Lacey in their gun battle with the unknown men in the vehicle behind Williams. Hoston's conduct exceeded merely being present at the scene of the crime. The testimony of Williams and Davis placed Phillips, Lacey and Hoston with guns drawn near the hut in front of the woman with Hoston directly in front of Williams. According to Williams, Phillips fired first and "then everybody just got to firing" while Williams dived to the ground and was wounded in the process.

*Id.* at ¶ 15. As a result, we concluded that the state presented sufficient evidence to support the defendant's conviction. *Id.* at ¶ 16.

{¶45} In *Capp*, we also examined the sufficiency of the evidence underlying the defendant's conviction for complicity by aiding and abetting. We found that

> Capp's participation in the crimes at issue and shared criminal intent can be reasonably inferred from his conduct and statements both before and after the shooting. This is not a case in which a defendant was merely present at the scene of an incident involving others. The evidence demonstrates that Capp assumed an active role in the commission of the offenses and in causing the shooting to occur. The state presented ample evidence establishing that it was Capp's relationship with Hayne and his anger or jealously following Hayne's reconciliation with Marshall that led to the shooting. It was Capp who had the connection to Hayne and Marshall — not Winters or Jones. The record establishes that on the day of the shooting, Capp showed up at Hayne's house twice before the shooting, looking for Hayne and threatening to "beat up" Marshall. Hayne testified that the second time Capp showed up at her home, he and Winters asked Hayne where Marshall was and when he was going to return because they had "something for him." Marshall testified

27

that when Hayne called him during his outpatient treatment, he heard Capp screaming and yelling in the background, "F * * * you, b * * * *. Tell him to come on. I'm about to f * * * you all up. Today's the day."

*Capp*, 8th Dist. Cuyahoga No. 102919, 2016-Ohio-295, at ¶ 31. Therefore, we found that the state presented sufficient evidence that the defendant acted in complicity with the principal offenders. *Id.* at ¶ 34.

{¶46} We find that those cases are instructive. Similar to *Hoston* and *Capp*, evidence — specifically, testimony from Gooden and Sims — establishes that Copeland participated in the gunfire and was not "merely present at the scene of an incident involving others." Instead, like the defendants in those cases, Copeland participated in the gun battle and instigated the entire dispute by first threatening Barnes with a gun and then showing up to Moore's home. Further, a number of other witnesses testified that, moments before the shooting began, they saw Copeland walking down the street toward Earl with another individual and that Copeland told Earl that he was the individual who went to Earl's mother's house. That evidence undermines Copeland's argument that he was "merely walking down the street."

{¶47} As to who Copeland was complicit with, we do agree with Copeland that there was not sufficient evidence that he aided or abetted Sims; however, there was sufficient evidence that he aided or abetted the unidentified individual who was with him when he walked down Baldwin Avenue. While Copeland is correct that there was not "evidence of discussions at the scene regarding a concerted effort of those present to shoot William Earl[,]" Copeland and the unidentified male arrived together with firearms and both shot at Earl after approaching him and informing Earl that they were the ones who confronted Earl's mother earlier that day. Sims testified that he saw Copeland "and the guy that was walking with him" shooting at Earl and that Earl was shooting back at them. He said he saw both Copeland and the male both shoot "a few" times and that after the shooting, both Copeland and the male ran together in the same direction. Similar to *Hoston* and *Capp*, the evidence shows that Copeland "supported [or] assisted" the unidentified male by participating in the gun battle against Earl. The lack of an express agreement between Copeland and the unidentified male is not determinative of complicity; instead, their concerted actions against Earl establish their support and assistance of one another. Further, the fact that the unidentified male walking with Copeland was not charged does not prevent Copeland from being charged or convicted of complicity with that individual. *See State v. Lamarr*, 3d Dist. Logan No. 8-04-39, 2005-Ohio-6030, 2005 WL 3031667, ¶ 8 ("[I]n order to convict a defendant as an accomplice, the State need not prove who the principal offender was but only that there was *a* principal." (Emphasis sic.) ).

{¶48} Given that evidence, we find that there was sufficient evidence to show that Copeland "support[ed], assist[ed], encourage[d], cooperate[d] with, advise[d], or

incite[d]" a principal offender and that a jury instruction on complicity was applicable to the facts of this case. Therefore, we find that the trial court did not abuse its discretion by providing a complicity instruction to the jury and overrule Copeland's second assignment of error.

*Copeland*, 2019-Ohio-1370 at ¶¶ 36-48, 2019 WL 1567916 at *6-9.

### 3.    Ground One is Non-Cognizable and/or Without Merit

In Ground One, Mr. Copeland argues that the trial court's jury instructions caused the jury to reach a verdict that "was not based on sufficient evidence proven beyond a reasonable doubt." (ECF Doc. 1-1, p. 12.) He bases this argument on what he describes as incompatible findings by the jury, like findings that he was not guilty of a firearm specification that required him to display, brandish, or use a firearm (*id.* at p. 10) but was guilty of discharging a firearm on or near prohibited premises (*id.* at p. 12). He speculates as to which trial testimony the jury must have believed and argues that the complicity jury instructions allowed the jurors "to circumvent their job in finding the elements of the charged offenses." (*Id.* at pp. 10, 12.)

To the extent that Mr. Copeland is seeking federal habeas relief based on an assertion that the trial court's complicity jury instruction violated state law, he fails to state a claim upon which federal habeas relief may be granted. As explained above, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67-68. Accordingly, the undersigned recommends that the Court **DISMISS** Ground One as not cognizable to the extent that the claim is based on asserted violations of state law.

Conversely, to the extent he is relying on an argument that he "suffered prejudice because the complicity instructions allowed the jurors to apply the instructions in a manner that violates due process" (ECF Doc. 8-1, p. 2), that argument must fail on the merits. For his due process argument to succeed, Mr. Copeland must show not only that the jury instructions were "erroneous" but that they were "so infirm that they rendered the entire trial fundamentally

29

unfair." *Buell*, 274 F.3d at 355 (citation and internal quotation marks omitted); *see also Daniels*, 501 F.3d at 741 (stating question on federal habeas review is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process") (quoting *Cupp*, 414 U.S. at 147).

Mr. Copeland has failed to demonstrate that the complicity jury instructions rendered his trial fundamentally unfair.  As the state court found, witnesses testified at trial that Mr. Copeland instigated the dispute by threatening another witness with a gun, arrived at the scene with the principal offender, was carrying a firearm at the scene, participated in the gun battle by shooting at the victim, and ran away from the scene in the same direction as the principal offender.  *See Copeland*, 2019-Ohio-1370 at ¶¶ 46-47, 2019 WL 1567916 at *8.  These factual findings are supported by an independent review of the trial transcript.  (*See, e.g.,* ECF Doc. 6-2, pp. 360-62, 371-72, 469-70, 475-76, 479-82.)

Mr. Copeland does not argue that the court of appeals' summary of trial testimony is inaccurate, or that the wording of the jury instruction was legally erroneous.  Instead, he argues that the jury must not have found the testimony that he fired his gun at the scene credible because he was found not guilty of a firearm specification that required the display, brandishing, or use of a firearm to commit the offense.  (ECF Doc. 1-1, pp. 10, 12.)  But he acknowledges that the jury found him guilty of other offenses whose elements suggest the jury did find testimony that he fired his gun at the scene credible, including felonious assault "by means of a deadly weapon or dangerous ordnance," Ohio R.C. § 2903.11(A)(2), and discharging a firearm on or near prohibited premises, Ohio R.C. § 2923.162(A)(3).  (ECF Doc. 1-1, p. 11.)  He argues "[t]his was an all or nothing case," and that the jury had to find him complicit in every crime charged or none of them.  (*Id.* at pp. 12-13.)  This argument is not compelling.

Even if Mr. Copeland could demonstrate that some of the jury's "not guilty" findings were inconsistent with its findings of guilt, it is well established that inconsistent verdicts are not reviewable and "a defendant's protection against an inconsistent verdict lies in an independent review of the sufficiency of the evidence." *United States v. Ruiz*, 386 F. App'x 530, 533 (6th Cir. 2010) (citing *United States v. Powell*, 469 U.S. 57, 67 (1984)). Here, as discussed above, the state court of appeals reviewed the evidence and found "there was sufficient evidence to show that Copeland 'support[ed], assist[ed], encourage[d], cooperate[d] with, advise[d], or incite[d]' a principal offender and that a jury instruction on complicity was applicable to the facts of this case." *Copeland*, 2019-Ohio-1370 at ¶ 48, 2019 WL 1567916 at *9. This finding was supported by the evidentiary record and was not legally erroneous.

For the reasons set forth above, the undersigned finds Mr. Copeland has failed to show that the jury instructions were erroneous, let alone so infirm as to render the entire trial fundamentally unfair. *See Buell*, 274 F.3d at 366. Mr. Copeland has also failed to demonstrate that the court of appeals finding was an unreasonable application of federal law, or that the state appellate court's adjudication of his claim resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. *See* 28 U.S.C. § 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181; *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007).

Accordingly, to the extent Mr. Copeland is asserting a federal due process claim in Ground One, the undersigned recommends that the Court **DENY** Ground One on its merits.

## D.  Claim in Ground Two is Non-Cognizable and/or Without Merit

In Ground Two of the Petition, Mr. Copeland argues that the trial court's refusal to merge felonious assault and discharge of a firearm on or near prohibited premises as allied offenses of

31

similar import deprived him of his constitutional right to due process and violated his double

jeopardy rights.  (ECF Doc. 8-1, p. 13.)  He states the offenses should have merged because:

> Copeland was found guilty of felonious assault in violation of R.C. 2903.11(A)(2)
> with an attached one-year firearm specification and also discharging a firearm on
> or near prohibited premises in violation [of] R.C. 2923.162(A)(3).  It was proven,
> based on the jury's verdict, that the princip[al] offender and not Copeland fired the
> fatal shots which ultimately took the life of the victim in this case.  The Felonious
> Assault stemmed from the shooting of the victim, the discharging a firearm on or
> near prohibited premises count, as the State Court ruled, is against the public.  The
> victim in this case was a part of the public.

(*Id.* at p. 14.)  Respondent argues in response that this court is bound by the state court's

construction of its own statutes, and that the state appeals court's determination on the issue did

not violate Ohio law or double jeopardy protections.  (ECF Doc. 6, pp. 32-33.)

For the reasons explained below, the undersigned concludes that Ground Two should be

**DISMISSED** to the extent Mr. Copeland seeks to challenge the application of sentencing law

and guidelines under state law and should be **DENIED** on the merits to the extent Mr. Copeland

is asserting that his double jeopardy rights were violated under the U.S. Constitution.

### 1.    Federal Habeas Review of State Sentencing Determination

A challenge to a "state court's interpretation and application of its sentencing laws and

guidelines" is not cognizable on federal habeas review.  *See Howard v. White*, 76 F. App'x. 52,

53 (6th Cir. 2003); *see also Thorne v. Lester*, 641 F. App'x. 541, 544 (6th Cir. 2016) (finding

federal habeas relief was unavailable for errors of state law, which included the petitioner's

claim that the state court misapplied the state merger rule).  This is because "[f]ederal habeas

corpus relief does not lie for errors of state law."  *Howard*, 76 F. App'x. at 53 (quoting *Estelle*,

502 U.S. at 67).

Mr. Coleman asserts that habeas review is appropriate because the sentencing

determination violated his rights under the Double Jeopardy clause.  "The Double Jeopardy

Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that no person shall 'be subject for the same offence to be twice put in jeopardy of life or limb.'" *Volpe v. Trim*, 708 F.3d 688, 695–96 (6th Cir. 2013), *as amended on denial of reh'g* (Jan. 31, 2013) (quoting U.S. Const. amend. V) (citing *Benton v. Maryland*, 395 U.S. 784, 794 (1969)).  In cases such as this, where cumulative sentences imposed in the same trial are challenged, the Supreme Court has held that the Double Jeopardy Clause "does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Volpe*, 708 F.3d at 696 (quoting *Missouri v. Hunter*, 459 U.S. 359, 366 (1983)).

"In contrast to most habeas claims, which are based entirely on federal constitutional rights, a claim under the Double Jeopardy Clause requires analysis of state law; because the state legislature has the authority to define and punish crimes, the definition of multiple punishments is dependent on the legislative intent of the state government." *Person v. Sheets*, 527 F. App'x. 419, 423 (6th Cir. 2013) (citing *Volpe*, 708 F.3d at 697). "[W]hen evaluating whether a state legislature intended to prescribe cumulative punishments for a single criminal incident, a federal court is bound by a state court's determination of the legislature's intent." *White v. Howes*, 586 F.3d 1025, 1031 (6th Cir. 2009) (citing *Ohio v. Johnson*, 467 U.S. 493, 499 (1984)).

### 2.     State Court Adjudication of Cumulative Sentences

Mr. Copeland's challenge to the state trial court's decision not to merge his convictions for felonious assault and discharging a firearm on or near prohibited premises as allied offenses was adjudicated on the merits by the state court of appeals.  *See Copeland*, 2019-Ohio-1370 at ¶¶ 58-68, 2019 WL 1567916 at *10-12.  The court made the following findings:

> {¶58} In his third assignment of error, Copeland argues that the trial court erred by not merging his convictions for felonious assault and discharging a firearm on or near prohibited premises, which he argues are allied offenses.

33

{¶59} Pursuant to R.C. 2941.25(A), "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." However,

> [w]here the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them. R.C. 2941.25(B).

{¶60} Two or more offenses are of dissimilar import within the meaning of R.C. 2941.25(B) "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, paragraph two of the syllabus.

{¶61} "At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct." *Id.* at ¶ 26. In *Ruff*, the Supreme Court held that if a defendant's conduct supports multiple offenses, the defendant can be convicted of all of the offenses if any one of the following is true: "(1) the conduct constitutes offenses of dissimilar import or significance, (2) the conduct shows the offenses were committed separately, or (3) the conduct shows the offenses were committed with separate animus or motivation." *Id.* at paragraph three of the syllabus, citing R.C. 2941.25(B).

{¶62} When determining whether two offenses are allied offenses of similar import, we apply a de novo standard of review. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28.

{¶63} We analyzed whether a defendant's convictions of felonious assault and discharge of a firearm on or near prohibited premises constituted allied offenses in *State v. Carzelle*, 8th Dist. Cuyahoga No. 105425, 2018-Ohio-92, 2018 WL 386622. In that case, we said that "[w]hen a 'defendant's conduct put[s] more than one individual at risk, that conduct could support multiple convictions because the offenses were of dissimilar import.' " *Id.* at ¶ 9, quoting *Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892. We found that, based on that principle, the defendant's convictions did not merge because "[t]he resulting harm of Carzelle's felonious assault conviction was the gunshot to [the victim's] face" and "[t]he resulting harm [of the defendant discharging a firearm on or near prohibited premises] was to the public." *Id.* at ¶ 10.

{¶64} In response to *Carzelle*, Copeland argues that "the allied offense issue is not an 'one-size-fits-all' analysis" and the fact that "the factual determination might negate an allied finding in a particular factual scenario, * * * does not mean that

two offenses can never be allied." He also argues that when looking at his alleged intent, it only shows that he shot back at Earl and that "[t]here was no evidence of a pause, a movement, and more shooting at a different target, which could fully support a finding of separate states-of-mind."

{¶65} First, Copeland's intent is only one of the factors that courts analyze when determining whether offenses are allied. In addition to intent, courts also look to whether "the conduct constitutes offenses of dissimilar import or significance or the conduct shows the offenses were committed separately." *Ruff* at paragraph three of the syllabus, citing R.C. 2941.25(B).

{¶66} Second, while Copeland is correct that the allied-offenses analysis is fact dependent and should be decided on a case-by-case basis, this case is factually similar to *Carzelle* in that Copeland's convictions for felonious assault and discharging a firearm on or near prohibited premises resulted in different harm and victims: the victim of Copeland's conviction for felonious assault was Earl, and the victim of his conviction for discharge of a firearm on or near prohibited premises was the public. We find that those convictions, therefore, constitute offenses of dissimilar import because each offense caused separate identifiable harm. *See Ruff* at ¶ 21 ("[O]ffenses are not allied offenses of similar import if they are not alike in their significance and their resulting harm.").

{¶67} Further, Copeland does not explain how a different factual scenario would cause the offenses to be allied; instead, he argues that "where it is unequivocal that the intent was to shoot a gun back at the victim who started the shooting, the felonious [assault] could not have been committed without also committing a Discharge offense." We fail to see how that point undermines or overcomes the fact that the two charges in this case resulted in harm to separate victims.

{¶68} Therefore, we agree with the trial court that Copeland's convictions for felonious assault and discharge of a firearm on or near prohibited premises should not merge. Accordingly, we overrule Copeland's third assignment of error.

*Copeland*, 2019-Ohio-1370 at ¶¶ 58-68, 2019 WL 1567916 at *10-12.

### 3.    Ground Two is Non-Cognizable and/or Without Merit

Mr. Copeland argues his convictions for felonious assault and discharging a firearm on or near prohibited premises should have been merged under Ohio's merger statute because they were allied offenses of similar import.  (ECF Doc. 1-1, p. 14.)  He acknowledges the first charge "stemmed from the shooting of the victim" and the second "is against the public," but argues

35

"[t]he victim in this case was a part of the public" (*id.*), and that "it would be absurd to conclude that the victim prior to being shot wasn't included as part of the public."  (ECF Doc. 8-1, p. 7.)

To the extent that Mr. Copeland is seeking federal habeas relief based on an assertion that the trial court failed to properly apply state sentencing laws, he fails to state a claim upon which federal habeas relief may be granted.  *See Howard*, 76 F. App'x at 53; *Thomas*, 641 F. App'x at 544.  Accordingly, the undersigned recommends that the Court **DISMISS** Ground Two as not cognizable to the extent that the claim is based on asserted errors of state law.

Alternately, to the extent Mr. Copeland contends the state court's application of the Ohio merger statute resulted in a violation of the Double Jeopardy Clause, that argument must fail on the merits.  For his double jeopardy argument to succeed, Mr. Copeland must show that the sentencing court prescribed a greater punishment than the legislature intended.  *See Volpe*, 708 F.3d at 696.  This Court is bound by the state court's interpretation of what the legislature intended.  *See White*, 586 F.3d at 1031.

Here, the state court of appeals considered the text of Ohio's merger statute and Ohio Supreme Court precedent before concluding that Mr. Copeland's two offenses "constitute offenses of dissimilar import because each offense caused separate identifiable harm." *Copeland*, 2019-Ohio-1370 at ¶ 66, 2019 WL 1567916 at *11.  Specifically, "the victim of [Mr.] Copeland's conviction for felonious assault was Earl, and the victim of his conviction for discharge of a firearm on or near prohibited premises was the public."  *Id.* at *11, ¶ 65.  The court's finding that the two offenses are of "dissimilar import" because one caused a specific harm to the victim and the other posed a danger to other members of the public was supported by Ohio law, and Mr. Copeland has failed to demonstrate that his sentence amounted to a greater punishment than the Ohio legislature intended when it enacted Ohio Revised Code § 2941.25(B).

36

Accordingly, to the extent Mr. Copeland is asserting a constitutional double jeopardy claim in Ground Two, the undersigned recommends the Court **DENY** Ground Two on is merits.

### IV. Recommendation

For the reasons stated above, the undersigned recommends that the Court **DISMISS** Ground Three with prejudice on the basis of procedural default, and **DISMISS** and/or **DENY** Ground One and Two as non-cognizable and without merit.

Dated: July 14, 2023

*/s/ Amanda M. Knapp*
AMANDA M. KNAPP
UNITED STATES MAGISTRATE JUDGE

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *See Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019); *see also Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).